UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CRIMINAL NO. 4:22-cr-348 |
| | § |
| WILMER RIVERA-HERNANDEZ, | § |
| Defendant | § |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Sharad S. Khandelwal and Stephanie Bauman, Assistant United States Attorneys, and the defendant Wilmer Rivera-Hernandez ("Defendant"), and Defendant's counsel, Alejandro Macias, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count 1 of the Indictment. Count 1 charges Defendant with **Interstate Travel with Intent to Engage in a Sex Act with a Minor**, in violation of Title 18, United States Code, Sections 2423(a). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for a violation of Title 18, United States Code, Sections 2423(a), is imprisonment for not less than 10 years and not more than life, and a fine of not more than $250,000.00. With a conviction for Count 1, there is mandatory restitution under Title 18, United States Code, Section 2429. Additionally, under Count 1, Defendant may receive

a term of supervised release after imprisonment of at least 5 years to life. *See* Title 18, United States Code, sections Section 3583(k). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(k). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

4. Pursuant to Title 18, United States Code, Section 3014(a), if the court determines that the Defendant is a non-indigent person, the Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5000.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District clerk's Office, P.O. Box 61010, Houston, TX 77208, Attention: Finance.

**Immigration Consequences**

5. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States,

denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Waiver of Appeal and Collateral Review

6. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005).

Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

9. The United States agrees to each of the following:

   (a) If Defendant pleads guilty to Count 1 of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will not bring additional charges related to Defendants' actions on or about June 2-5, 2020, involving the Minor Victim, or to Defendant's attempts to obstruct justice in this matter in approximately February-April 2023.

   (b) Because Defendant attempted to obstruct justice, the United States does not anticipate that Defendant will qualify for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines. However, if the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding – Southern District of Texas Only

10. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of

4

Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

    (a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

    (b) to set forth or dispute sentencing factors or facts material to sentencing;

    (c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

    (d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

    (e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and

that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

   (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

   (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count 1 of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense of interstate travel with intent to engage in a sex act with a minor beyond a

reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

On or about June 2 through June 5, 2020, within the Southern District of Texas and elsewhere, the Defendant transported an individual who had not attained the age of 18 years, hereinafter known as the "Minor Victim," in interstate commerce with the intent to engage in sexual activity for which the Defendant could be charged with a criminal offense, namely sexual assault in the fourth degree pursuant to Section 5-14-127 of the Arkansas Code, indecency with a child pursuant to Texas Penal Code § 21.11, and sexual assault pursuant to Texas Penal Code § 22.011.

On or about the late night of June 2 or the early morning hours of June 3, 2020, within the Southern District of Texas, the Defendant picked up the Minor Victim (then 15 years old, DOB xx-xx-2004) from her home on what he told her was a date. However, the Defendant then began driving her away from the Houston, Texas, area against her will. A reconstruction of the route taken by the Defendant, using cell tower records, showed that over the next few days, the Defendant took the Minor Victim out of Texas, through Arkansas, and into Tennessee, where, on June 5, 2020, law enforcement found the Defendant and rescued the Minor Victim.

In interviews after her rescue, the Minor Victim explained that she had agreed to go on a date with the Defendant and that he picked her up from her home, but that instead of taking her on a date he started to drive her around with no apparent intent to take her on a date. The Minor Victim told the Defendant to take her back home, but the Defendant refused. During the drive, the Defendant bought alcohol and ordered her to drink. When she initially refused, he grabbed her and threatened her and her family. She began to drink out of fear, and reported that he kept making her drink throughout the drive, which made her heavily intoxicated or made her fall asleep

for significant parts of the next few days. She was not able to recognize where he was taking her. He also took her cell phone from her, but she reported that she was able to occasionally sneak it back from him and used it to try to get help.

At around 3:48pm on June 3, 2020, which was the first full day of this event, the Defendant and the Minor Victim were in Lufkin, Texas. The Minor Victim was able to access her phone, which the Defendant had taken from her, and texted a picture of the Defendant's license plate and a message saying she had been kidnapped by the Defendant. The Minor Victim indicated that she tried to get out of the car, but that he prevented her from escaping. Despite this text message, law enforcement was not alerted to her kidnapping.

At around 5pm that day, the Defendant crossed into Arkansas. At or about 6pm that day, the Minor Victim was able to access her cell phone and attempted to contact 911 for help. However, there was no response from 911 because of what appears to be language difficulties.

The Minor Victim reported that Defendant stopped at a hotel for the night at some point during the drive. An examination of the cell tower records showed that this occurred on the night of June 3, 2020, at or near Little Rock, Arkansas. The Minor Victim reported that she was intoxicated when they arrived at the hotel. When she woke up the next morning at the hotel, she was wearing only a bra and panties, felt pain in her vagina, and saw blood. Later SANE examination after the Minor Victim was rescued found semen on her panties. A subsequent comparison of the DNA in the semen and the Defendant's DNA found that the DNA profile from the semen originated from a single individual, and that the probability of obtaining this profile if the DNA came from the Defendant was 226 septillion times greater than the probability of obtaining the profile if the DNA came from an unrelated, unknown individual.

8

According to cell tower records, Defendant and the Minor Victim began driving east, away from Little Rock, Arkansas, at around 11:30am on June 4th. At around 4pm that day, they crossed from Arkansas into Tennessee.

At around 11pm on June 4th, the Minor Victim was once again able to access her cell phone. She texted a message to a family friend that he "can kill me" and to "call police." She then texted "quick" and "please." At this point, Texas law enforcement was contacted by members of the Minor Victim's family. Over the next few hours, going into the early morning hours of June 5, 2020, law enforcement officers in Texas issued an amber alert for the Minor Victim. These law enforcement officers obtained a geolocation for the Minor Victim's cell phone, which eventually came back to a truck stop in Knoxville, Tennessee. Law enforcement in Texas began to coordinate with law enforcement officers in Tennessee, who at 2:30 am on June 5, 2020, located the Defendant's vehicle at the truck stop with the Minor Victim inside.

After waiving his *Miranda* rights, in a videotaped interview that morning the Defendant admitted to knowing the Minor Victim was a minor and admitted to having sex with the Minor Victim during at a hotel they stopped at during the drive from Texas to Tennessee.

In approximately February – April 2023, after the Defendant's indictment and arrest in this case, the Defendant obstructed justice by attempting to provide false evidence to the government that the Minor Victim had recanted her allegations against him. Specifically, the Defendant persuaded an associate living in Mexico to create and send WhatsApp messages to the Defendant's sister living in Honduras. These messages purported to be from the Minor Victim and made it appear that the Minor Victim was in love with the Defendant, had been forced to make these allegations against the Defendant, and that in fact he had not kidnapped and raped her against her will. The Defendant then coordinated with his sister to deliver these fake exculpatory WhatsApp

9

messages to another associate, who provided these messages to the Defendant's court-appointed lawyer at the time. At Defendant's instruction, the Defendant's lawyer—not knowing that the messages were fake—unwittingly provided these messages to the United States in an attempt to persuade the government to dismiss the charges or to plead the case out in a way favorable to the Defendant.

### Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by

the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss in an amount to be determined either before sentencing or within 90 days of the sentencing hearing. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture

21. Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

22. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

24. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

25. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Notification of the Sex Offender Registration and Notification Act

26. Defendant has been advised, and understands, that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: where he resides; where he is an employee; and where he

is a student. The Defendant understands that the requirements for registration include providing his name, his residence address and the names and addresses of any places where he is or will be an employee or a student, among other information. The Defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three (3) business days after any change of residence, employment, or student status. Defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for failure to register under federal law, 18 U.S.C. §2250, which is punishable by a fine or imprisonment, or both.

[REST OF PAGE LEFT INTENTIONALLY BLANK]

## Complete Agreement

27. This written plea agreement, consisting of 15 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ____Houston____, Texas, on ____August 24____, 2023.

_____
Wilmer Rivera-Hernandez, Defendant

Subscribed and sworn to before me on ____August 24____, 2023.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:
ALAMDAR S. HAMDANI
United States Attorney

By: _____
SHARAD S. KHANDELWAL
STEPHANIE BAUMAN
Assistant United States Attorney
Southern District of Texas

_____
ALEJANDRO MACIAS
Attorney for Defendant

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:22-cr-348 |
| § | |
| WILMER RIVERA-HERNANDEZ, § | |
| Defendant § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          8·21·23
ALEJANDRO MACIAS                   Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          8-21-23
WILMER RIVERA-HERNANDEZ            Date
Defendant

15